## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

ASPEN SEATING, LLC, a Colorado limited liability company,

      Plaintiff,

v.

SUNRISE MEDICAL (US) LLC, a Delaware limited liability company,

      Defendant.

---

## COMPLAINT

---

Plaintiff Aspen Seating, LLC submits this complaint for trademark infringement, unfair competition, deceptive trade practices under the Colorado Consumer Protection Act, and unjust enrichment, and states as follows:

### I.    PARTIES

1.    Plaintiff Aspen Seating, LLC ("Aspen") is a Colorado limited liability company with an address of 8100 Southpark Way, C400, Littleton, Colorado 80120.

2.    Defendant Sunrise Medical (US) LLC ("Sunrise") is a Delaware limited liability company with an address of 2842 Business Park Avenue, Fresno, California 93727.

## II.    JURISDICTION & VENUE

3.    This complaint brings federal claims under the Lanham Act, 15 U.S.C. §§ 1114 and 1125. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a)-(b).

4.    The Court has supplemental jurisdiction to hear the state-law claims under 28 U.S.C. § 1367(a).

5.    Venue in this district is proper under 28 U.S.C. § 1391(b)(1)-(2).

## III.    FACTS

### A.    Aspen and its Marks

6.    Aspen is in the business of wheelchair accessories and wheelchair-related services.

7.    Aspen owns the mark RIDE—and associated marks incorporating RIDE—for use in connection with wheelchair accessories and wheelchair-related services (together, the "RIDE Marks").

8.    Aspen has continuously and exclusively used the RIDE Marks for more than twelve years.

9.    The RIDE Marks are distinctive and strong. The relevant consumers strongly associate the RIDE Marks with Aspen and the goods and services it provides.

10.    Aspen owns several federal trademark registrations in Class 12 for its RIDE Marks, including a registration for the word mark RIDE:

| Mark | Reg. No. | Reg. Date | Goods & Services |
|---|---|---|---|
| RIDE | 4,925,367 | March 29, 2016 | (Class 12) Seat and back cushions for wheelchairs; backrest supports specially adapted for wheelchairs; wheelchair seat and back adjustment devices, namely wedges, belts, straps, and head and arm and leg supports; wheelchair seat and back cushion covers, specially adapted for wheelchair use |
| RIDE (design) | 3,004,753 | October 4, 2005 | (Class 12) Seat cushions for wheel chairs |
| RIDE DESIGNS | 3,004,752 | October 4, 2005 | (Class 12) Seat cushions for wheel chairs |
| RIDE CAM | 3,029,862 | December 13, 2005 | (Class 12) Wheel chair cushion adjustment mechanism sold as an integral component of wheel chairs and seat cushions for wheel chairs. |

11.     All of these federal registrations are valid and subsisting. Also, the last three have become incontestable under 15 U.S.C. § 1065. **Exhibit 1** contains copies of Aspen's federal registration certificates.

### B.     Defendant's Unlawful Activities

12.     Sunrise is using the mark RIDE QUICKIE in connection with wheelchairs, wheelchair accessories, and wheelchair-related services. The images below show examples of Sunrise's use:









## RIDE QUICKIE BLOG

### WORKING TOGETHER TO ACHIEVE GREATNESS

I competed in wheelchair sports events ranging from basketball to table tennis to track for most of my life. I represented Hong Kong in the 1972 Paralympics and I represented Canada in the 1976, 1980, and 1984 Paralympics, earning silver medals in the table tennis event.

Posted on 8/22/2017 12:00:00 AM | 0 comments

13.     Sunrise owns and operates the website shown at the domain name http://www.ridequickie.com. The website prominently features the mark RIDE QUICKIE in connection with Sunrise's wheelchairs, wheelchair accessories, and wheelchair-related services. The domain name is registered to an individual named Robin Visser, who on information and belief is (or was at the time of the domain name's registration) a Sunrise employee.

14.     Sunrise's RIDE QUICKIE mark is confusingly similar to Aspen's federally registered RIDE Marks.

15.     The goods and services offered under Sunrise's RIDE QUICKIE mark are of the same general type as the goods and services offered under Aspen's RIDE Marks.

16.     The parties' target customers are extremely similar, if not identical (i.e., purchasers and potential purchasers of wheelchairs, wheelchair accessories, and wheelchair-related services).

17.     The parties advertise and market their goods and services through the same or similar channels of trade.

18.     On information and belief, Sunrise adopted and began using the RIDE QUICKIE mark with knowledge of Aspen's RIDE Marks. Sunrise did so to intentionally trade off the goodwill of Aspen's marks, which Aspen has developed through many years of prior use.

19.     Aspen began using the RIDE Marks well before Sunrise began using the RIDE QUICKIE mark, both nationwide and within the State of Colorado. Thus, Aspen has priority.

20.     Sunrise's use of RIDE QUICKIE began after several of Aspen's federal trademark registrations for the RIDE Marks had already issued. Thus, Sunrise had constructive notice of Aspen's federally registered trademark rights under 15 U.S.C. § 1072.

21.     Aspen has not authorized or permitted Sunrise's use of RIDE QUICKIE.

22.     On approximately April 14, 2017, Aspen sent a demand letter to Sunrise. Aspen advised Sunrise that its unauthorized use of RIDE QUICKIE was infringing and diluting Aspen's rights in the RIDE Marks. Aspen demanded that Sunrise stop using RIDE QUICKIE in connection with any wheelchair-related goods or services.

23.     Sunrise replied to Aspen's demand letter on May 31, 2017. Sunrise took the position that "Sunrise's slogan of RIDE QUICKIE . . . does not create a commercial impression that would cause marketplace confusion or dilution of Aspen Seating's [RIDE Marks]." Sunrise declined to stop using RIDE QUICKIE.

C.     Effects of Sunrise's Unlawful Activities

24.     Sunrise's unauthorized use of RIDE QUICKIE is likely to cause confusion, to cause mistake, or to deceive consumers or potential consumers. Consumers will likely perceive some connection or association between Aspen and Sunrise as to source, sponsorship, or affiliation, even though none exists.

25.     Sunrise's unauthorized use of RIDE QUICKIE falsely designates the origin of its goods and services and falsely describes or represents facts with respect to those goods and services.

26.     Sunrise's unauthorized use of RIDE QUICKIE has enabled it to trade off and receive the benefit of the goodwill built up by Aspen over years of continuously and exclusively using the RIDE Marks.

27.     Sunrise's unauthorized use of RIDE QUICKIE effectively removes Aspen's ability to control the quality of the goods and services associated with the RIDE Marks. This places Aspen's reputation and goodwill at least partially in the hands of Sunrise, whose goods and services Aspen cannot control.

28.     Sunrise's unauthorized use of RIDE QUICKIE has caused Sunrise to become unjustly enriched at the expense of Aspen. Through its unauthorized use of RIDE QUICKIE, Sunrise has received benefits at Aspen's expense under

circumstances that would make it unjust for Sunrise to retain those benefits without compensating Aspen.

## IV. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement

29. Aspen incorporates and re-asserts the paragraphs above.

30. Sunrise's actions infringe Aspen's federally registered RIDE Marks under 15 U.S.C. § 1114(1).

### SECOND CLAIM FOR RELIEF
### Federal Unfair Competition, False Designation of Origin, and False Description

31. Aspen incorporates and re-asserts the paragraphs above.

32. Sunrise's actions violate Aspen's federal rights in the RIDE Marks, giving rise to unfair competition, false designation of origin, and false description under 15 U.S.C. § 1125(a).

### THIRD CLAIM FOR RELIEF
### Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(1)

33. Aspen incorporates and re-asserts the paragraphs above.

34. Sunrise's actions violate the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(1). Specifically, through its unauthorized use of RIDE QUICKIE—despite its knowledge of Aspen and Aspen's RIDE Marks used on extremely similar goods and services—Sunrise has:

(a) knowingly passed off its goods and services as Aspen's;

(b) knowingly made false representations about the source, sponsorship, approval, or certification of its goods and services, by suggesting that they have some connection to Aspen; and

(c) knowingly made false representations as to the affiliation, connection, association, or certification of its goods and services, by suggesting that they have some connection to Aspen.

## FOURTH CLAIM FOR RELIEF
### Colorado Common Law Trademark Infringement

35.     Aspen incorporates and re-asserts the paragraphs above.

36.     Sunrise's actions infringe Aspen's trademark rights under Colorado common law.

## FIFTH CLAIM FOR RELIEF
### Unfair Competition

37.     Aspen incorporates and re-asserts the paragraphs above.

38.     Sunrise's actions create unfair competition against Aspen under Colorado common law.

## SIXTH CLAIM FOR RELIEF
### Unjust Enrichment

39.     Aspen incorporates and re-asserts the paragraphs above.

40.     Sunrise's actions have unjustly enriched Sunrise at the expense of Aspen under Colorado common law.

## V.     WILLFUL CONDUCT BY SUNRISE

41.     With respect to each cause of action above, Sunrise's violations are (and have been) willful.

42.   Sunrise adopted the RIDE QUICKIE mark with knowledge of Aspen and its RIDE Marks. Sunrise purposefully chose RIDE QUICKIE despite this knowledge, hoping to trade off the goodwill in Aspen's RIDE Marks.

43.   Sunrise has continued using RIDE QUICKIE even after receiving notice from Aspen that Sunrise's use violates the law. In particular, Sunrise has continued using the mark after receiving Aspen's April 2017 demand letter and after responding to that letter.

## VI.   DAMAGES; INJUNCTIVE RELIEF

44.   Aspen has been and will continue to be harmed by Sunrise's unlawful actions described above.

45.   Aspen is entitled to money damages. However, money damages cannot fully compensate Aspen for the harm it has suffered and continues to suffer. Aspen is entitled to a preliminary injunction and a permanent injunction to remedy this ongoing and irreparable harm.

## VII.   PRAYER

Aspen asks the Court for the following relief:

A.   enter judgment in Aspen's favor on all of its claims;

B.   preliminarily and permanently enjoin Sunrise from using RIDE, RIDE QUICKIE, all other marks or names containing RIDE, and any other marks or names confusingly similar to Aspen's RIDE Marks, including but not limited to use of the domain name www.ridequickie.com;

C.   award Aspen all monetary remedies to which it is entitled under federal law and Colorado law, including all profits realized by Sunrise, all damages (trebled) sustained by Aspen, and costs of court, under 15 U.S.C. § 1117(a), Colo. Rev. Stat. § 6-1-113, and Colorado common law;

D.     award Aspen its reasonable attorney's fees under 15 U.S.C. § 1117(a) and Colo. Rev. Stat. § 6-1-113; and

E.     award any other relief that the Court deems just and proper.

## VIII.  Jury Demand

Aspen demands a jury trial on all issues triable by a jury.

DATED: September 8, 2017

Respectfully submitted,

/s/ Jeffrey M. Brenman
Jeffrey M. Brenman
Beth Robinson
FORTIS LAW PARTNERS LLC
1900 Wazee Street, Suite 300
Denver, CO 80202
(303) 295-9702
(303) 295-9701 (fax)
jbrenman@fortislawpartners.com
brobinson@fortislawpartners.com

/s/ Travis R. Wimberly
Louis T. Pirkey
Travis R. Wimberly
PIRKEY BARBER PLLC
600 Congress Ave., Suite 2120
Austin, TX 78701
(512) 322-5200
(512) 322-5201 (fax)
lpirkey@pirkeybarber.com
twimberly@pirkeybarber.com

*Counsel for Plaintiff Aspen Seating, LLC*